## ADOPTION OF JENNA.

No. 92-P-702.

Berkshire. October 21, 1992. - December 23, 1992.

Present: ARMSTRONG, SMITH, & PORADA, JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Dispensing with parent's consent to adoption. *Practice, Civil*, Master, Judicial discretion.

A party in a proceeding to dispense with the need for parental consent to adoption of her minor child waived any objection to the matter being heard by a master by her assent to the appointment of a master at the pretrial conference and by her failure to present an objection to the judge or master for a ruling. [740-741]

The court expressed its view that, in the future, it would be inappropriate and an abuse of discretion for a judge of the Probate and Family Court to refer a petition to dispense with the need for parental consent to adoption to a master, considering the nature of the inquiry and the attendant procedures. [741-743]

The record of a proceeding to dispense with the need for parental consent to the adoption of a minor contained clear and convincing evidence to support both the master's findings and the judge's ultimate conclusion based on the master's report that the parent was currently unfit to provide for her child's best interest. [744-745]

PETITION filed in the Berkshire Division of the Probate and Family Court Department on June 29, 1989.

The case was heard by *Andrea F. Nuciforo*, J., on a master's report.

*William D. Barry* for the mother.

*Virginia A. Peel* for Department of Social Services.

PORADA, J. The principal issues presented by the mother in this appeal from the allowance by a Probate and Family Court judge of a petition to dispense with her consent to the adoption of her daughter are whether the referral of the petition to a master by the judge constituted error and whether the evidence was sufficient to support the judge's conclusion

that the mother was currently unfit to provide for her child's best interest. For the reasons stated, we affirm the judgment.

We summarize the pertinent procedural background. On June 29, 1989, the Department of Social Services (department) filed a petition to dispense with the need for parental consent to the adoption of Jenna.[1] On December 8, 1989, at the pretrial conference, the judge appointed a master to hear the case with the consent of the parties, who were represented by counsel. Subsequent to the conference, the mother of the child filed a motion to change counsel and to represent herself. Her motion was allowed. After that, the mother filed an objection to the case proceeding before the attorney who was appointed as master in the case. The hearing began before the master on June 6, 1990. On June 7, counsel was appointed to assist the mother and thereafter represented the mother in the case. The master's hearing continued on June 7, June 22, and September 12, 1990, and was completed on December 18, 1990. During the course of the hearing, the mother did not raise any objection to the case being heard by the master. The master filed his report with the court on January 14, 1991. After a hearing on the department's motion to confirm the report and the mother's objections to the report, the judge allowed the department's motion, entered his own findings, and granted the department's petition on March 6, 1991. From this judgment, the mother appeals.

The mother asserts that the judge's reference of this case to a master was an abuse of discretion and a violation of the State and Federal Constitutions. The mother, however, assented to the appointment of a master with facts final at the pretrial conference. Thereafter, when she was given permission to represent herself, she filed an objection to the case proceeding before the attorney who had been appointed as the master, but she never presented the objection to the judge for a ruling. See *Marcil* v. *John Deere Industrial Equip. Co.*, 9 Mass. App. Ct. 625, 632 (1980). She did not raise the objection during the course of the hearings before

---

[1] A pseudonym has been used for the child's name.

the master, include it in her objections to the master's report, or file a motion to strike the master's report. Nor were the arguments against the appointment of a master raised in this appeal ever presented to the judge for his decision. Consequently, the mother has waived her right to claim error. See *Burrell* v. *Whiting*, 324 Mass. 243, 245 (1949); *Edgar* v. *Edgar*, 406 Mass. 628, 629 (1990).

We are concerned, nevertheless, that our holding not be misunderstood as approval of the practice of referring such cases to a master. Because the matter has been fully argued and presents an issue of importance which is likely to arise again, we express our views on the issue. *Globe Newspaper Co.* v. *Chief Med. Examr.*, 404 Mass. 132, 134 (1989). *Trustees of the Prince Condominium Trust* v. *Prosser*, 412 Mass. 723, 725 (1992).

Under the provisions of G. L. c. 221, § 57,[2] a judge of the Probate and Family Court has the power to appoint a master in civil actions not governed by the Massachusetts Rules of Civil Procedure or the Massachusetts Rules of Domestic Relations Procedure.[3] Even though the power is statu-

---

[2]General Laws c. 221, § 57, as amended by St. 1986, c. 310, § 20, provides: "When a civil action is at issue and is not governed by chapter two hundred and twenty-one B [child support cases] or by the Massachusetts Rules of Civil Procedure or by any extensions thereof to domestic relations actions, the justice of the probate and family court division may appoint one or more masters to hear the parties, examine their vouchers and evidence, state accounts and report upon such matters therein as may be ordered by the court. The report shall be prima facie evidence upon such matters as are expressly referred to such masters."

[3]Massachusetts Rule of Civil Procedure 53(b), 386 Mass. 1237 (1982), and Mass.R.Dom.Rel.P. 53(b) (1982) provide in pertinent part as follows: "Appointment. . . . The court in which an action is pending may appoint a master therein subject, however, to a standing order, if any, of the Administrative Justice designating classes of cases not to be tried to a master. . . ."

The Massachusetts Rules of Civil Procedure apply to the Probate and Family Court in proceedings seeking equitable relief, see Mass.R.Civ.P. 1, as amended, 385 Mass. 1214 (1982), and the Massachusetts Rules of Domestic Relations Procedure govern the procedure in the Probate and Family Court in all proceedings for divorce, separate support and custody of minor children, annulment and affirmation of marriage, an action for spousal or child support, an action to determine paternity or support for a child born out of wedlock, modification thereof, contempt, and abuse pre-

tory in origin, the decision to appoint a master is a matter of judicial discretion, which should be exercised "most discriminately and reasonably sparingly." *O'Brien* v. *Dwight*, 363 Mass. 256, 280 (1973). *Boston Redev. Authy.* v. *Doherty*, 370 Mass. 99, 103 (1976). An appointment of a master may constitute an abuse of discretion where it results in delay and proves burdensome to the litigants, *Boston Redev. Authy.* v. *Doherty*, 370 Mass. at 102-105; where the importance and nature of the inquiry is such that it demands the attention and skill of an experienced judge, *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 691 (1981); or where the purpose of the proceeding is best accomplished and the applicable procedures are more consonant with the legislative intent if the evidence is heard and the facts are determined by a judge, *Garelick* v. *Board of Appeals of Franklin*, 350 Mass. 289, 290 (1966).

Speedy resolution of issues involving custody of children is essential. "No cases of any kind have a greater claim for expedition at all stages than those involving care and custody of children." *Custody of a Minor*, 389 Mass. 755, 764 & n.2 (1983). See also *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 118 n.7 (1984). As illustrated by this case, reference to a master does not accelerate the process or reduce the time and attention required of the judge. It results in at least two hearings, an evidentiary one before the master and a nonevidentiary one on the report and objections to it before the judge. Mass. Probate Court Rules 20, 21, & 24. Moreover, since the report is considered to be prima facie evidence on matters referred to the master under G. L. c. 221, § 57, the parties are entitled to a trial before a judge at which the report may be supplemented, controlled, or rebutted by other evidence. See *Gallagher* v. *Phinney*, 284 Mass. 255, 258 (1933) (an auditor's report, being prima facie evidence, could be supplemented or rebutted by other evidence). Consequently, reference of these cases to a master is likely to be burdensome to

---

vention as enumerated in G. L. cc. 207, 208, 209, 209A, 209C, and 215, see Mass.R.Dom.Rel.P. 1 (1986).

both the litigants and the courts and is unlikely to result in the speedy resolution of these cases.

In addition, there is no doubt that cases involving the termination of parental rights to their children are of great importance. The "loss of a child may be as onerous a penalty as the deprivation of the parents' freedom." *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979), quoting from *Custody of a Minor (No.1)*, 377 Mass. 876, 884 (1979). They should not be assigned to a master just because the trial may be protracted. See *O'Brien* v. *Dwight*, 363 Mass. at 280. The nature of the inquiry is one that demands the kind of judgment and experience that can best be provided by a Probate Court judge. See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 646 (1975). See also *Santosky* v. *Kramer*, 455 U.S. 745, 762 (1982). Proceedings under G. L. c. 210, § 3, often "involve complex questions of fact and law," *Department of Public Welfare* v. *J.K.B.*, 379 Mass. at 4, and require the judge to make specific and detailed findings of fact demonstrating that close attention has been paid to the evidence. *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 670 (1986). The determination of parental unfitness and of the child's best interest, required to grant the petition, must be supported by clear and convincing evidence. *Santosky* v. *Kramer*, 455 U.S. at 768-770. *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 392 Mass. 696, 698 (1984). Given the nature of the inquiry and the attendant procedures, we believe it would be more consonant with legislative intent if the evidence is heard and the facts are required to be determined by a judge rather than a master. See *Garelick* v. *Board of Appeals of Franklin*, 350 Mass. at 290.

For all of these reasons, we conclude that it is an abuse of discretion for a judge of the Probate and Family Court to refer a petition under G. L. c. 210, § 3, to a master.[4] Because of our view, we need not reach the constitutional issue.

---

[4]We recognize that some States have implicitly permitted the practice of referring to a referee or a master cases involving parental rights to their

The mother's attack on the sufficiency of the evidence to support the master's findings and the judge's conclusion that the mother is currently unfit to provide for the child's best interest is without merit. Much of the mother's argument seeks to relitigate the propriety of this case being heard by a master rather than a judge, an issue which we have decided was foreclosed by her actions at the trial level. Her remaining arguments are relegated to the master's reliance on stale information and the master's failure to make certain findings. In his findings, the master noted that the mother fed the child cat food to provide the child with liver in her diet. The mother argues that this finding should not have been made, because it related to an event that occurred only once and some seven years before the hearing. Although the mother is correct that stale information cannot be the basis of current unfitness, prior parental conduct is deemed relevant in assessing the parent's capacity and ability to care for the child, *Adoption of George*, 27 Mass. App. Ct. 265, 268 (1989); moreover, this was only one of numerous findings. The master's other findings, which focused on the mother's inability to provide the child with the nurturing needed for her growth and development, the mother's past neglect of the child, the progress and development of the child in foster care, the child's wish that she not be returned to her mother, and the mother's failure to comply with the department's service plans to improve her parental skills, were sufficient to support his ultimate conclusions. See *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 395 Mass. 180, 184-187 (1985); *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 289 (1987); *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 15 Mass. App. Ct. 916, 917 (1983).

---

minor children. See, e.g., *State Dept. of Human Resources* v. *L.W.*, 597 So. 2d 703, 704 (Ala. Civ. App. 1992); *In re B.L.J.*, 717 P.2d 376, 381 (Alaska 1986); *Arizona Dept. of Economic Security* v. *Superior Court*, 147 Ariz. 450 (1985); *In re Gerald J.*, 1 Cal. App. 4th 1180, 1183-1186 (1991); *In re Theresa S.*, 196 Conn. 18, 22 (1985); *In re M.M.C.*, 277 N.W.2d 281, 283, 285 (N.D. 1979).

The mother complains that the master failed to take into consideration her love and affection for the child, her cooperation with the department until 1988 or 1989, the failure of the department to provide a service plan which provided for her to be reunited with her child after she removed the child from the Commonwealth without authority in 1988, and the failure of the department to make a reasonable accommodation for the child being developmentally delayed. Contrary to the mother's assertions, the master found that the mother loved her daughter and that the department had provided services to the mother and child since 1984 and had implemented service plans that were designed to reunite mother and daughter after 1988. All of these findings were amply supported by the evidence presented to the master. While it is true that the evidence supports the mother's assertion that she cooperated with the department until 1988, the master's failure to include such a finding in his report would not be material to his conclusion that the mother lacked the present ability and capacity to be a parent to her child in relation to her child's needs, age, affections, and environment. See *Adoption of Carlos*, 413 Mass. 339, 348 (1992).

In sum, we are satisfied from the record that there was clear and convincing evidence to support both the master's findings and the judge's ultimate conclusions based on the master's report.

*Judgment affirmed.*